FILED
CLERK, U.S. DISTRICT COU

APR 2 5 2005

CENTRAL DISTRICT OF CALIFOR
BY ____ DEPU

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DARREN IRWIN COHEN,

                    Petitioner,

          v.

M. BENOV,

                    Respondent.

CASE NUMBER

CV 04-7645-PA (RC)

NOTICE OF FILING
OF MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND THE
LODGING OF PROPOSED JUDGMENT
AND/OR ORDER

TO:   All Parties of Record

Darren Irwin Cohen
REG #28297-112
Los Angeles Metropolitan Detention Center
535 N. Alameda Street
Los Angeles, CA 90012

Beong-Soo Kim
Assistant U. S. Attorney
Office of the U. S. Attorney
312 N. Spring Street
Los Angeles, CA 90012

Priority      X
Send          X
Enter         ___
Closed        ___
JS-5/JS-6     ___
JS-2/JS-3     ___
Scan Only     ___

You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed and a proposed judgment and/or order has been lodged on April 25, 2005, copies of which are attached.

Any party having objections to the report and recommendation and the proposed judgment and/or order shall, not later than May 18, 2005, file and serve a written statement of objections with points and authorities in support thereof before the Honorable Rosalyn M. Chapman, U.S. Magistrate Judge.

Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a judgment and/or order by the District Judge.

DOCKETED ON CM

APR 2 5 2005

BY ____ 060

Dated:      April 25, 2005

Attachments

CLERK, UNITED STATES DISTRICT COURT

By _____
              Deputy Clerk

FILED
CLERK, U.S. DISTRICT COURT

APR 2 5 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARREN IRWIN COHEN, | ) | Case No. CV 04-7645-PA(RC) |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION OF A |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| M. BENOV, | ) | |
| | ) | |
| Respondent. | ) | |

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California.

DOCKETED ON CM

APR 2 5 2005

BY _____ 060

BACKGROUND

I

On January 9, 1998, an indictment was filed in the Ontario Court (General Division), Canada, charging petitioner Darren Irwin Cohen with fraud in excess of $5,000.00 in violation of Section 380(1)(a) of the Criminal Code of Canada, and on August 4, 1998, a warrant was

1  issued for the arrest of petitioner on the charge; on August 4, 1998,

2  an information was filed charging petitioner with breach of

3  recognizance in violation of Section 145(3) of the Criminal Code of

4  Canada, and on the same date, a warrant was issued for the arrest of

5  petitioner on the charge; and on September 15, 1998, an information

6  was filed charging petitioner with failure to attend a court hearing

7  in violation of Section 145(2) of the Criminal Code of Canada, and on

8  the same date, a warrant was issued for the arrest of petitioner on

9  the charge.  Answer, Exh. A, Affidavit of Detective Constable William

10 Timothy Lappan of the Town of Bancroft, Ontario Province, Canada

11 ("Lappan Aff."), ¶¶ 11, 16, 20, and attachments at 81-100.[1]

12

13 On October 21, 2003, the Government of Canada submitted to the

14 United States a formal request for petitioner's extradition to face

15 prosecution on the criminal charges pending against him for fraud in

16 excess of $5,000 in violation of Section 380(1)(a) of the Criminal

17 Code of Canada, failure to attend a court hearing in violation of

18 Section 145(2) of the Criminal Code of Canada, and breach of

19 recognizance in violation of Section 145(3) of the Criminal Code of

20 Canada.  Answer, Exh. A at 6-8, 43-45.  On or about October 30, 2003,

21 the United States made a formal request to extradite petitioner to

22 Canada.[2]  Answer, Exh. A, Declaration of Thomas B. Heinemann

23 ("Heinemann Decl.").

24

_____

25    [1]  The details of petitioner's charged offenses are set
26 forth in the Lappan affidavit and attachments.

27    [2]  This Court takes judicial notice, pursuant to Fed. R.
   Evid. 201, of all documents in In re Darren Irwin Cohen, case no.
28 CV04-1055-PA(RC).

On August 25, 2004, Magistrate Judge Rosalyn M. Chapman held an extradition hearing, and found there is probable cause to believe petitioner committed the three charged offenses and should be extradited to Canada under the extradition treaty between the United States and Canada.  On September 13, 2004, this Court certified to the Secretary of State its finding that petitioner is extraditable to Canada on the three offenses charged against him, and there is probable cause to believe petitioner committed the offenses, and on September 30, 2004, District Judge Percy Anderson declined to stay petitioner's extradition pending resolution of this habeas proceeding.

                                  II.

On September 15, 2004, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2241 challenging his extradition to Canada. In his habeas petition, petitioner claims: (1) the [G]overnment of Canada "did not present . . . all facts in support of probable cause"; and (2) he is "being sought for offenses for which the Applicable Treaty does not permit extradition."  Petition at 3.  On November 19, 2004, respondent filed an answer.  On March 31, 2005, petitioner filed a reply, and on April 13, 2005, petitioner filed a supplement to the reply.[3]

//

//

//

//

---

[3]  In his reply, petitioner now states he "does not dispute the validity of the[] [failure to attend court and breach of recognizance] charges."  Reply at 5:15-19.

3

**DISCUSSION**

**III**

Extradition is "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." Terlinden v. Ames, 184 U.S. 270, 289, 22 S.Ct. 484, 492, 46 L.Ed. 534 (1902). Extradition from the United States is governed by 18 U.S.C. § 3184, which "confers jurisdiction on 'any justice or judge of the United States' or any authorized magistrate to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation." Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1009 (9th Cir. 2000). Specifically, Section 3184 provides:

> Whenever there is a treaty or convention for extradition
> between the United States and any foreign government,
> . . . any justice or judge of the United States, or any
> magistrate judge authorized so to do by a court of the
> United States, or any judge of a court of record of general
> jurisdiction of any State, may, upon complaint made under
> oath, charging any person found within his jurisdiction,
> with having committed within the jurisdiction of any such
> foreign government any of the crimes provided for by such
> treaty or convention . . . , issue his warrant for the
> apprehension of the person so charged, that he may be
> brought before such justice, judge, or magistrate judge, to
> the end that the evidence of criminality may be heard and

4

1   considered. . . .  If, on such hearing, he deems the

2   evidence sufficient to sustain the charge under the

3   provisions of the proper treaty or convention . . . , he

4   shall certify the same, together with a copy of all the

5   testimony taken before him, to the Secretary of State, that

6   a warrant may issue upon the requisition of the proper

7   authorities of such foreign government, for the surrender of

8   such person, according to the stipulations of the treaty or

9   convention; and he shall issue his warrant for the

10   commitment of the person so charged to the proper jail,

11   there to remain until such surrender shall be made.

12

13   18 U.S.C. § 3184.

14

15      "The extradition process is ordinarily initiated by a formal

16   request from a foreign government to the Department of State, which

17   along with the Department of Justice, evaluates whether the request is

18   within the scope of the relevant extradition treaty between the United

19   States and the requesting nation." Barapind v. Reno, 225 F.3d 1100,

20   1105 (9th Cir. 2000); Cornejo-Barreto, 218 F.3d at 1009.  "Once

21   approved, the United States Attorney for the judicial district where

22   the person sought is located files a complaint in federal district

23   court seeking an arrest warrant for the person sought." Barapind, 225

24   F.3d at 1105; Cornejo-Barreto, 218 F.3d at 1009.  A hearing is then

25   held before a federal judge to determine whether the offense is

26   extraditable and probable cause exists to sustain the charge(s).

27   //

28   //

Ibid.[4]  If these requirements are met, the judicial officer must
certify to the Secretary of State that the individual is extraditable.
18 U.S.C. § 3184; Zanazanian v. United States, 729 F.2d 624, 626 (9th
Cir. 1984).

"[E]vidence sufficient to sustain the charge" requires that
"[t]he requesting nation must demonstrate that there is probable cause
that the fugitive committed the charged offense."  Cornejo-Barreto,
218 F.3d at 1009; Quinn v. Robinson, 783 F.2d 776, 783 (9th Cir.),
cert. denied, 479 U.S. 882 (1986).  The requirement of "competent
evidence that would be sufficient to establish probable cause to hold
a defendant for trial under United States law[,]" Emami v. United
States Dist. Court for the N. Dist. of Cal., 834 F.2d 1444, 1447 (9th
Cir. 1987), is reflected in Articles 9[5] and 10[6] of the extradition

---

[4]  To be extraditable, the offense must be within the scope
of the treaty, an offense in both the requesting state and the
United States, and an offense not subject to the political
offense exception.  Cornejo-Barreto, 218 F.3d at 1009 n.4.

[5]  Article 9 provides, in pertinent part:

When the request relates to a person who has not yet
been convicted, it must also be accompanied by a
warrant of arrest issued by a judge or other judicial
officer of the requesting State and by such evidence
as, according to the laws of the requested State, would
justify his arrest and committal for trial if the
offense had been committed there. . . .

Heinemann Decl., ¶ 3, attachments at 17.

[6]  Article 10 provides, in pertinent part:

Extradition shall be granted only if the evidence be
found sufficient, according to the laws of the place
where the person sought shall be found, either to
justify his committal for trial if the offense of which

treaty between the United States and Canada.  Nevertheless, "the
country seeking extradition is not required to produce all its
evidence at an extradition hearing and it is not [this Court's] role
to determine whether there is sufficient evidence to convict the
accused."  Quinn, 783 F.2d at 815.  Rather, probable cause exists "if
there is any competent evidence in the record to support it."  Then v.
Melendez, 92 F.3d 851, 854 (9th Cir. 1996); Quinn, 783 F.2d at 791.
Competent evidence includes hearsay evidence, "and the usual rules of
evidence are not applicable in this context."  Then, 92 F.3d at 855
(citations omitted); Quinn, 783 F.2d at 815-16; see also Barapind v.
Enomoto, 400 F.3d 744, 748 (9th Cir. 2005) (en banc) (per curiam)
("'With regard to the admissibility of evidence, the general United
States extradition law requires only that the evidence submitted be
properly authenticated.'" (quoting Emami, 834 F.2d at 1451)).

"Decisions of an extradition court are not directly reviewable
but may be challenged collaterally by a petition for habeas corpus."
Barapind, 400 F.3d at 748 n.5; Oen Yin-Choy v. Robinson, 858 F.2d
1400, 1402 (9th Cir. 1988), cert. denied, 490 U.S. 1106 (1989).  "The
scope of habeas review of an extradition order is severely limited."
Artukovic v. Rison, 784 F.2d 1354, 1355-56 (9th Cir. 1986).  More
specifically, the court may only consider whether: the extradition
judge had jurisdiction to conduct the proceeding and over the
individual sought; the extradition treaty was in force; the crime fell

---

he is accused had been committed in its territory or to
prove that he is the identical person convicted by the
courts of the requesting State.

Heinemann Decl., ¶ 3, attachments at 18.

1  within the treaty's terms; there is probable cause the individual

2  sought committed the crime; and the crime comes within the political

3  offense exception.  <u>Cornejo-Barreto</u>, 218 F.3d at 1009-10; <u>In re</u>

4  <u>Extradition of Coe</u>, 261 F. Supp. 2d 1203, 1205-06 (C.D. Cal. 2003).

5

6                                    IV

7       The extradition treaty between the United States and Canada

8  provides, in relevant part:

9       .

10          (1) Extradition shall be granted for conduct which

11          constitutes an offense punishable by the laws of both

12          Contracting Parties by imprisonment or other form of

13          detention for a term exceeding one year or any greater

14          punishment.

15

16  Heinemann Decl., ¶ 3, attachments at 9-42.

17

18       The charges pending against petitioner in Canada are set forth in

19  Sections 380 and 145 of the Criminal Code of Canada.  Specifically,

20  Section 380(1)(a) prohibits fraud over $5,000.00, as follows:

21

22          (1)  Every one who, by deceit, falsehood or other fraudulent

23          means, whether or not it is a false pretense within the

24          meaning of this Act, defrauds the public or any person,

25          whether ascertained or not, of any property, money or

26          valuable security or any service,

27          (a) is guilty of an indictable offence and liable to a term of

28          imprisonment not exceeding ten years. . . .

1   Affidavit of Nadia Elizabeth Thomas ("Thomas Aff."), ¶¶ 15-16.  The

2   affidavit of Detective Constable Lappan sets forth evidence showing

3   that petitioner, between May 1992 and July 1996, defrauded Barbara

4   Lubov Henderson, a Canadian resident, of approximately $3.2 million

5   Canadian dollars.  Lappan Aff., ¶¶ 2, 7-11, attachments at 67-77.

6   Specifically, Detective Constable Lappan states:

7

8           8. . . .  In July 1994, . . . , Darren COHEN contacted Ms.

9       HENDERSON by telephone and engaged her in what would later

10      be found to be a fraudulent scheme.  COHEN told Ms.

11      HENDERSON that, as a result of her years as a customer to

12      telemarketing agencies, her name had been entered into a

13      cash promotion in the United States, and that she was the

14      grand prize winner of several million dollars in United

15      States funds.  COHEN explained to the victim that, unlike

16      Canada where a prize money is not taxable, prize winnings in

17      the United States were taxable and that those taxes had to

18      be paid prior to the release of any awards.  Darren COHEN

19      then fraudulently represented himself as an agent for a

20      company in the United States who would, for a percentage,

21      act on the victim's behalf, as an intermediary to facilitate

22      the victim claiming her prize money while paying the least

23      amount of taxes possible.  COHEN asked the victim to provide

24      him with various sums of money, in order to facilitate

25      collection of her winnings.  The victim agreed to do so, and

26      she forwarded her money to COHEN after liquidating her stock

27      portfolio in Scotland.  All funds passed through the

28      victim's financial accounts in Canada before being wired to

the accused's personal accounts, which were located both in
Canada and in the United States.   The police investigation
into this matter later revealed there were no "prize
winnings," and that COHEN was not acting for the victim in
any legitimate capacity.   [¶]  9.  Ms. HENDERSON was also
the unfortunate victim of a home invasion robbery in 1996.
She discussed this traumatic event with [COHEN], who
suggested that she travel to his home in California for some
relaxation.   The victim agreed to travel from Canada to
COHEN's home, and she stayed with him at 14131 Beresford
Road, Beverly Hill[s], California between 10 June 1996 and
23 June 1996, before returning to Canada.   During that time,
COHEN had daily personal contact with the victim, and he
continued to ply her for money.   [¶]  10.  The total amount
received by [COHEN] from the victim during the period May
1992 to July 1996, was approximately $3,253,329.50 in
Canadian dollars.

Section 145(2) and (3) of the Criminal Code of Canada provides,
as follows:

    (2) Every one who,
        a) being at large on his undertaking or recognizance
        given to or entered into before a justice or judge,
        fails, without lawful excuse, the proof of which lies
        on him, to attend court in accordance with the
        undertaking or recognizance, or
        b) having appeared before a court, justice or

1          judge, fails, without lawful excuse the proof of

2          which lies on him, to attend court as thereafter

3          required by the court, justice or judge, or to

4          surrender himself in accordance with an order of

5          the court, justice or judge, as the case may be,

6          is guilty of an indictable offence and liable to

7          imprisonment for a term not exceeding two years or

8          is guilty of an offence punishable on summary

9          conviction[.]

10    (3) Every person who is at large on an undertaking or

11    recognizance given to or entered into before a justice or

12    judge and is bound to comply with a condition of that

13    undertaking or recognizance directed by a justice or judge,

14    . . . , and who fails, without lawful excuse, the proof of

15    which lies on that person, to comply with that condition or

16    direction, is guilty of

17          a) an indictable offence and is liable to imprisonment

18          for a term not exceeding two years; or

19          b) an offence punishable on summary conviction.

20

21    Thomas Aff., ¶ 17.

22

23    The affidavit of Detective Constable Lappan also establishes that

24    on October 17, 1996, petitioner was arrested on the charge of

25    violating Section 380(1)(a), fraud in excess of $5,000.00, and,

26    following a hearing, petitioner was released from custody on certain

27    terms and conditions.  Lappan Aff., ¶¶ 11-12.  Petitioner's conditions

28    of release were subsequently amended to permit him to return to

11

California to conduct his business, provided, among other things:  he

reside at 14131 Beresford Road, Beverly Hills, California; he

immediately notify Detective Constable Lappan of any change of his

California address; and he provide Detective Constable Lappan with a

written itinerary in advance of leaving California.  Id., ¶ 13.

Petitioner was required to appear in Ontario Superior Court on July

10, 1998, to plead guilty to the charge of fraud in excess of

$5,000.00, Section 380(1)(a), but he failed to appear and a new court

date of August 4, 1998, was set.  Id., ¶ 14.  Petitioner again failed

to appear in Ontario Superior Court on August 4, 1998.  Id., ¶ 16.

When Detective Constable Lappan made inquiries regarding petitioner's

residence, he discovered petitioner was no longer living at 14131

Beresford Road, Beverly Hills; rather, he had sold his cars for cash

and had left California without leaving a forwarding address and

without providing Detective Constable Lappan with a written itinerary

of his whereabouts, both of which were required by the terms of his

release.  Id., ¶¶ 15-17.


     Petitioner claims in Grounds One there is no probable cause to

support his extradition.  There is no merit to this claim.  As an

initial matter, petitioner does not dispute he is the same Darren

Irwin Cohen against whom such charges are now pending.  See also

Lappan Aff., ¶ 4, attachment at 79-80.  Moreover, based on the

evidence from Detective Constable Lappan detailed above, there is more

than sufficient evidence to establish probable cause that petitioner

committed each of the offenses charged against him.  Nevertheless, in

his reply and supplemental reply, petitioner has submitted evidence he

claims establishes that the monies he received from Ms. Henderson were

gifts, rather than proceeds fraudulently obtained.  See Reply at 5:13-14, 6:7-7:23, Exh. B at 14, Exhs. C, J-L; Supplemental Reply at 1:17-3:22, Exh. F.  Although "a fugitive facing extradition can present his own evidence to explain away the requesting government's evidence of probable cause[,]" Barapind, 400 F.3d at 749; Mainero v. Gregg, 164 F.3d 1199, 1207 n.7 (9th Cir. 1999), the evidence petitioner has presented does not do that.  Rather, it is merely petitioner's "conflicting evidence, the credibility of which could not be assessed without a trial." Barapind, 400 F.3d at 750; see also Emami, 834 F.2d at 1452 ("An extradition proceeding is not a trial; the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial.").  Thus, since this Court "does not weigh conflicting evidence and make factual determinations" in assessing probable cause, petitioner's "gift" evidence provides no basis for rejecting the Government's evidence establishing probable cause petitioner committed fraud.  Barapind, 400 F.3d at 750; see also Emami, 834 F.2d at 1452 (Emami's "attempt . . . to use his records to explain that no fraudulent billings for medical services had occurred would only be appropriate at trial.").  Similarly, petitioner's claim that Ms. Henderson is now dead, and would not be available as a witness at his trial, is a matter for the Canadian courts to address, and it does not negate the probable cause determination.  Mainero, 164 F.3d at 1207.[7]

Further, each of the charged offenses is comparable to a federal

_____

[7]  It should be noted that before petitioner fled, Ms. Henderson testified under oath at petitioner's preliminary inquiry.  Supplemental Reply, Exh. F.

charge in the United States, and each is punishable in both Canada and the United States by imprisonment of more than one year, as required by the extradition treaty between the United States and Canada. First, the offense of fraud in excess of $5,000.00, Section 380(1)(a) is comparable to the federal offenses of fraud and mail fraud set forth in 18 U.S.C. §§ 1341, 1343, and both the Canadian and American offenses are punishable by imprisonment for more than one year. Petitioner does not dispute this. Second, petitioner also does not dispute that the offense of failure to attend a court hearing, Section 145(2), is comparable to the federal offense of failure to appear set forth in 18 U.S.C. § 3146, which also is punishable in both Canada and the United States by imprisonment for more than one year.

However, in Ground Two, petitioner claims there is no federal counterpart to the Canadian offense of breach of recognizance under Section 145(3) of the Criminal Code of Canada, and the offense is not punishable by more than one year imprisonment; thus, petitioner claims he cannot be extradited to face charges on that offense.[8] Petitioner is mistaken. An examination of the United States Code shows that a criminal defendant who violates or breaches a condition of pretrial release, such as petitioner did, may be charged with violating 18 U.S.C. § 3148, which provides:

> (a) **Available sanctions.** - A person who has been released
> under section 3142 of this title, and who has violated a

---

[8] Respondent aptly notes, of course, that this claim would **not** prevent petitioner's extradition since he would, nevertheless, be extradited on the other charges against him.

14

1     condition of his release, is subject to a revocation of

2     release, an order of detention, and a prosecution for

3     contempt of court.

4          *   *   *

5     (c) **Prosecution for contempt.** - The judicial officer may

6     commence a prosecution for contempt, under section 401 of

7     this title, if the person has violated a condition of

8     release.

9

10  18 U.S.C. § 3148.  In turn, Section 401 provides for criminal

11  contempt, as follows:

12

13     A court of the United States shall have power to punish by

14     fine or imprisonment, or both, at its discretion, such

15     contempt of its authority, and none other, as -

16          *   *   *

17     (3) Disobedience or resistance to its lawful writ, process,

18     order, rule, decree, or command.

19

20  18 U.S.C. § 401.  Although Section 401 does not provide a specific

21  penalty for its violation, "sentences for contumacious conduct can be

22  quite severe.  Under federal law, there is no statutory limit to the

23  sentence that can be imposed in a jury-tried criminal contempt

24  proceeding." United States v. Dixon, 509 U.S. 688, 724 n.2, 113 S.Ct.

25  2849, 2871 n.2, 125 L.Ed.2d 556 (1993)(Justice White, concurring, in

26  part, and dissenting, in part); see also Green v. United States, 356

27  U.S. 165, 187-89, 78 S.Ct. 632, 645-46 2 L.Ed.2d 672 (1958) (affirming

28  three-year criminal contempt sentence under Section 401 for failing to

appear in court after being released on bail), <u>overruled in part on other grounds</u>, <u>Bloom v. State of Illinois</u>, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); <u>United States v. Carpenter</u>, 91 F.3d 1282, 1283 (9th Cir. 1996) ("The criminal contempt statute, 18 U.S.C. § 401(3), grants broad discretion in determining a sentence; it specifies neither minimum nor maximum penalty." (footnote omitted)) (per curiam)); <u>United States v. Gabay</u>, 923 F.2d 1536, 1538-39 n.1, 1545 (11th Cir. 1991) (affirming 60-month sentence for criminal contempt in violation of Section 401 for defendant who fled shortly before his criminal trial).

Finally, in his reply and supplemental reply, petitioner concocts an elaborate scenario under which his and his mother's lives would be placed in grave danger if he is extradited to Canada because he previously acted as "an undercover operative," assisting the Ontario Provincial Police ("O.P.P.") and Royal Canadian Mounted Police in exposing fraud in the Canadian telemarketing industry and in uncovering "deep rooted corruption among O.P.P. rank and file."[9] Reply at 1:2:18, 5:21-27, 7:26-8:25, 10:2-21, Exhs. A, G, M; Supplemental Reply at 4:22-28. Of course, new claims for relief cannot be raised in a reply brief. <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1026 (1995). Nevertheless, even if this claim were properly raised, under the rule

---

[9]   Indeed, petitioner further states that, with Ms. Henderson's money and blessing, he funded operation "Phone Busters," and for that work, he "received awards and medals" due to his "single-handed efforts that produced and resulted in the indictments and arrests and thus the shutting down of . . . fraudulent companies. . . ." Supplemental Reply at 4:6-22.

of non-inquiry, "an extraditing court will not inquire into the procedures or treatment awaiting a surrendered fugitive in the requesting country." Lopez-Smith v. Hood, 121 F.3d 1322, 1326-27 (9th Cir. 1997); Mainero, 164 F.3d at 1205 n.6; see also Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir. 2003) ("[T]he rule of non-inquiry limits the judicial role, although 'it is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed.'" (citation omitted)).  Moreover, petitioner has presented absolutely no reliable evidence that "corrupt" O.P.P. officers would harm him if he returns to Canada.[10]  Extradition of Manzi, 888 F.2d 204, 206 (1st Cir. 1989), cert. denied, 494 U.S. 1017 (1990).  Similarly, petitioner has presented absolutely no reliable evidence that various "criminals" in Canada would harm him if he returns to Canada.[11]  Mainero, 164 F.3d at 1210; see also Sindona v.

---

[10]  Petitioner cites two newspaper reports in which O.P.P. officers were charged with various crimes, Reply, Exh. M; however, petitioner does not relate these charges to any incidents involving himself.  Similarly, petitioner provides the declaration of his friend, Howard Denbow, who relates that *petitioner* "intimated" to him that certain individuals want to kill him and have threatened petitioner's mother, and these individuals have "a strong network of Police affiliations." Reply, Exh. A.  However, Denbow's statement is hearsay, and reflects solely what petitioner told him!  Finally, petitioner's mother, Sandra Bernard, states that certain criminal organizations "have large numbers of high-ranking O.P.P. officers on their 'payroll.'" Reply, Exh. G.  However, Mrs. Bernard sets forth no personal knowledge or basis for this statement.

[11]  Petitioner relies exclusively on Mr. Denbow's and his mother's declarations.  Mr. Denbow vaguely reports threats to

17

1   <u>Grant</u>, 619 F.2d 167, 174-75 (2d Cir. 1980) (refusing to bar

2   petitioner's extradition to Italy despite claim "return to Italy would

3   subject [petitioner] to risk of murder or injury at the hands of his

4   political enemies"); <u>Peroff v. Hylton</u>, 542 F.2d 1247, 1249 (4th Cir.

5   1976) ("If there are potential assassins in Swedish prisons, it is for

6   Sweden to take measures adequate to secure [extraditee's] safety and

7   protection.  . . .  There is no basis for suspecting Sweden's criminal

8   processes, or supposing that Sweden cannot or will not adequately

9   provide for [extraditee's] protection from criminal elements who may

10  have grievances against him."), <u>cert. denied</u>, 429 U.S. 1062 (1977).

11

12      Thus, for the foregoing reasons, petitioner should be extradited

13  to Canada to face charges for violating Sections 380(1)(a) and 145(2)

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  _____

23  petitioner "from people I knew living in Montreal as well as from
    Darren and his mother."  Reply, Exh. A.  Petitioner's mother
24  states that in April 1998, she was confronted by the wife of an
    individual who was under investigation by the "Phone Busters"
25  task force, and who "made it very clear that it would be in
    [petitioner's] and [his mother's] best interest, to put it
26  mildly, for [petitioner] not to set foot in Canada again."
    Reply, Exh. G.  Despite this threat, however, petitioner's mother
27  has apparently continued to reside in Canada for the past seven
28  years.

1    and (3) of the Criminal Code of Canada, and petitioner's habeas corpus

2    petitioner should be denied.

3

4                              **RECOMMENDATION**

5         For the foregoing reasons, IT IS RECOMMENDED that the Court issue

6    an Order: (1) approving and adopting this Report and Recommendation;

7    (2) adopting the Report and Recommendation as the findings of fact and

8    conclusions of law herein; and (3) entering Judgment denying the

9    petition and dismissing the action with prejudice.

10

11   DATE: *April 25, 2005*          _Rosalyn M. Chapman_

12                                   ROSALYN M. CHAPMAN
                                     UNITED STATES MAGISTRATE JUDGE

13   R&R\04-7645.R&R
     4/25/05

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



LODGED
CLERK, U.S. DISTRICT COURT

APR 2 5 2005

CENTRAL DISTRICT OF CALIFORNIA
BY
DEPUTY

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DARREN IRWIN COHEN,                  ) Case No. CV 04-7645-PA(RC)
                                     )
                  Petitioner,        ) ORDER ADOPTING REPORT AND
                                     ) RECOMMENDATION OF UNITED STATES
                                     ) MAGISTRATE JUDGE
vs.                                  )
                                     )
M. BENOV,                            )        PROPOSED
                                     )
                  Respondent.        )
_____)

        Pursuant to 28 U.S.C. Section 636, the Court has reviewed the

Petition and other papers along with the attached Report and

Recommendation of United States Magistrate Judge Rosalyn M. Chapman,

and has made a de novo determination.


        IT IS ORDERED that:  (1) the Report and Recommendation is

approved and adopted; (2) the Report and Recommendation is adopted as

the findings of fact and conclusions of law herein; and (3) Judgment

shall be entered denying the petition for writ of habeas corpus and

dismissing the action with prejudice.

//

1    IT IS FURTHER ORDERED that the Clerk shall serve copies of this

2 Order, the Magistrate Judge's Report and Recommendation and Judgment

3 by the United States mail on the parties.

4

5 DATED: _____

6

7                              _____
                                    PERCY ANDERSON

8                              UNITED STATES DISTRICT JUDGE

9

   R&Rs\04-7645.ado
10  4/25/05

11

12

13

14

·15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                     CENTRAL DISTRICT OF CALIFORNIA

9

10

11   DARREN IRWIN COHEN,              )  Case No. CV 04-7645-PA(RC)
                                      )
12                  Petitioner,       )
                                      )
13                                    )  JUDGMENT
     vs.                              )
14                                    )
     M. BENOV,                        )       PROPOSED
15                                    )
                    Respondent.       )
16   _____)

17

18       Pursuant to the Order of the Court adopting the findings,

19   conclusions, and recommendations of United States Magistrate Judge

20   Rosalyn M. Chapman,

21

22       IT IS ADJUDGED that the Petition for Writ of Habeas Corpus is

23   denied and the action is dismissed with prejudice.

24       DATE:   _____

25                                   _____
                                          PERCY ANDERSON
26                                   UNITED STATES DISTRICT JUDGE
     R&Rs\04-7645.jud
27   4/25/05

28