UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DARREN IRWIN COHEN,      ) Case No. CV 04-7645-PA(RC)
                          )
           Petitioner,   ) ORDER ADOPTING REPORT AND
                          ) RECOMMENDATION OF UNITED STATES
                          ) MAGISTRATE JUDGE
vs.                        )
                          )
M. BENOV,               )
                          )
           Respondent.  )
_____)

    Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a de novo determination.

    IT IS ORDERED that: (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

//

1    IT IS FURTHER ORDERED that the Clerk shall serve copies of this

2  Order, the Magistrate Judge's Report and Recommendation and Judgment

3  by the United States mail on the parties.

4

5  DATED:    *May 24, 2005*

6

7                                    PERCY ANDERSON
                                UNITED STATES DISTRICT JUDGE
8

9

   R&Rs\04-7645.ado
10  4/25/05

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

FILED
CLERK, U.S. DISTRICT COURT

APR 25 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10

11  DARREN IRWIN COHEN,              ) Case No. CV 04-7645-PA(RC)
                                     )
12                 Petitioner,       )
                                     )
13  vs.                              ) REPORT AND RECOMMENDATION OF A
                                     ) UNITED STATES MAGISTRATE JUDGE
14  M. BENOV,                        )
                                     )
15                 Respondent.       )
    _____)

16

17      This Report and Recommendation is submitted to the Honorable

18  Percy Anderson, United States District Judge, by Magistrate Judge

19  Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and

20  General Order 01-13 of the United States District Court for the

21  Central District of California.

22

DOCKETED ON CM

APR 25 2005

BY                    060

23                            **BACKGROUND**

24                                 I

25      On January 9, 1998, an indictment was filed in the Ontario Court

26  (General Division), Canada, charging petitioner Darren Irwin Cohen

27  with fraud in excess of $5,000.00 in violation of Section 380(1)(a) of

28  the Criminal Code of Canada, and on August 4, 1998, a warrant was

1 issued for the arrest of petitioner on the charge; on August 4, 1998,

2 an information was filed charging petitioner with breach of

3 recognizance in violation of Section 145(3) of the Criminal Code of

4 Canada, and on the same date, a warrant was issued for the arrest of

5 petitioner on the charge; and on September 15, 1998, an information

6 was filed charging petitioner with failure to attend a court hearing

7 in violation of Section 145(2) of the Criminal Code of Canada, and on

8 the same date, a warrant was issued for the arrest of petitioner on

9 the charge.  Answer, Exh. A, Affidavit of Detective Constable William

10 Timothy Lappan of the Town of Bancroft, Ontario Province, Canada

11 ("Lappan Aff."), ¶¶ 11, 16, 20, and attachments at 81-100.[1]

12

13 On October 21, 2003, the Government of Canada submitted to the

14 United States a formal request for petitioner's extradition to face

15 prosecution on the criminal charges pending against him for fraud in

16 excess of $5,000 in violation of Section 380(1)(a) of the Criminal

17 Code of Canada, failure to attend a court hearing in violation of

18 Section 145(2) of the Criminal Code of Canada, and breach of

19 recognizance in violation of Section 145(3) of the Criminal Code of

20 Canada.  Answer, Exh. A at 6-8, 43-45.  On or about October 30, 2003,

21 the United States made a formal request to extradite petitioner to

22 Canada.[2]  Answer, Exh. A, Declaration of Thomas B. Heinemann

23 ("Heinemann Decl.").

24

25 [1]  The details of petitioner's charged offenses are set

26 forth in the Lappan affidavit and attachments.

27 [2]  This Court takes judicial notice, pursuant to Fed. R.

Evid. 201, of all documents in In re Darren Irwin Cohen, case no.

28 CV04-1055-PA(RC).

On August 25, 2004, Magistrate Judge Rosalyn M. Chapman held an extradition hearing, and found there is probable cause to believe petitioner committed the three charged offenses and should be extradited to Canada under the extradition treaty between the United States and Canada.  On September 13, 2004, this Court certified to the Secretary of State its finding that petitioner is extraditable to Canada on the three offenses charged against him, and there is probable cause to believe petitioner committed the offenses, and on September 30, 2004, District Judge Percy Anderson declined to stay petitioner's extradition pending resolution of this habeas proceeding.

II

On September 15, 2004, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2241 challenging his extradition to Canada. In his habeas petition, petitioner claims: (1) the [G]overnment of Canada "did not present . . . all facts in support of probable cause"; and (2) he is "being sought for offenses for which the Applicable Treaty does not permit extradition."  Petition at 3.  On November 19, 2004, respondent filed an answer.  On March 31, 2005, petitioner filed a reply, and on April 13, 2005, petitioner filed a supplement to the reply.[3]

//

//

//

//

_____

[3]  In his reply, petitioner now states he "does not dispute the validity of the[] [failure to attend court and breach of recognizance] charges."  Reply at 5:15-19.

3

1 | DISCUSSION

2 | III

3 | Extradition is "the surrender by one nation to another of an

4 | individual accused or convicted of an offense outside of its own

5 | territory, and within the territorial jurisdiction of the other,

6 | which, being competent to try and to punish him, demands the

7 | surrender." Terlinden v. Ames, 184 U.S. 270, 289, 22 S.Ct. 484, 492,

8 | 46 L.Ed. 534 (1902). Extradition from the United States is governed

9 | by 18 U.S.C. § 3184, which "confers jurisdiction on 'any justice or

10 | judge of the United States' or any authorized magistrate to conduct an

11 | extradition hearing under the relevant extradition treaty between the

12 | United States and the requesting nation." Cornejo-Barreto v. Seifert,

13 | 218 F.3d 1004, 1009 (9th Cir. 2000). Specifically, Section 3184

14 | provides:

15 |

16 | Whenever there is a treaty or convention for extradition

17 | between the United States and any foreign government,

18 | . . . any justice or judge of the United States, or any

19 | magistrate judge authorized so to do by a court of the

20 | United States, or any judge of a court of record of general

21 | jurisdiction of any State, may, upon complaint made under

22 | oath, charging any person found within his jurisdiction,

23 | with having committed within the jurisdiction of any such

24 | foreign government any of the crimes provided for by such

25 | treaty or convention . . . , issue his warrant for the

26 | apprehension of the person so charged, that he may be

27 | brought before such justice, judge, or magistrate judge, to

28 | the end that the evidence of criminality may be heard and

4

1   considered. . . .  If, on such hearing, he deems the

2   evidence sufficient to sustain the charge under the

3   provisions of the proper treaty or convention . . . , he

4   shall certify the same, together with a copy of all the

5   testimony taken before him, to the Secretary of State, that

6   a warrant may issue upon the requisition of the proper

7   authorities of such foreign government, for the surrender of

8   such person, according to the stipulations of the treaty or

9   convention; and he shall issue his warrant for the

10   commitment of the person so charged to the proper jail,

11   there to remain until such surrender shall be made.

12

13   18 U.S.C. § 3184.

14

15   "The extradition process is ordinarily initiated by a formal

16   request from a foreign government to the Department of State, which

17   along with the Department of Justice, evaluates whether the request is

18   within the scope of the relevant extradition treaty between the United

19   States and the requesting nation."  Barapind v. Reno, 225 F.3d 1100,

20   1105 (9th Cir. 2000); Cornejo-Barreto, 218 F.3d at 1009.  "Once

21   approved, the United States Attorney for the judicial district where

22   the person sought is located files a complaint in federal district

23   court seeking an arrest warrant for the person sought."  Barapind, 225

24   F.3d at 1105; Cornejo-Barreto, 218 F.3d at 1009.  A hearing is then

25   held before a federal judge to determine whether the offense is

26   extraditable and probable cause exists to sustain the charge(s).

27   //

28   //

1  Ibid.[4]  If these requirements are met, the judicial officer must

2  certify to the Secretary of State that the individual is extraditable.

3  18 U.S.C. § 3184; <u>Zanazanian v. United States</u>, 729 F.2d 624, 626 (9th

4  Cir. 1984).

5

6      "[E]vidence sufficient to sustain the charge" requires that

7  "[t]he requesting nation must demonstrate that there is probable cause

8  that the fugitive committed the charged offense."  <u>Cornejo-Barreto</u>,

9  218 F.3d at 1009; <u>Quinn v. Robinson</u>, 783 F.2d 776, 783 (9th Cir.),

10 <u>cert. denied</u>, 479 U.S. 882 (1986).  The requirement of "competent

11 evidence that would be sufficient to establish probable cause to hold

12 a defendant for trial under United States law[,]" <u>Emami v. United</u>

13 <u>States Dist. Court for the N. Dist. of Cal.</u>, 834 F.2d 1444, 1447 (9th

14 Cir. 1987), is reflected in Articles 9[5] and 10[6] of the extradition

15 _____

16     [4] To be extraditable, the offense must be within the scope
   of the treaty, an offense in both the requesting state and the
17 United States, and an offense not subject to the political
   offense exception.  <u>Cornejo-Barreto</u>, 218 F.3d at 1009 n.4.

18     [5] Article 9 provides, in pertinent part:

19
   When the request relates to a person who has not yet
20 been convicted, it must also be accompanied by a
   warrant of arrest issued by a judge or other judicial
21 officer of the requesting State and by such evidence
   as, according to the laws of the requested State, would
22 justify his arrest and committal for trial if the
   offense had been committed there. . . .
23

24 Heinemann Decl., ¶ 3, attachments at 17.

25     [6] Article 10 provides, in pertinent part:

26
   Extradition shall be granted only if the evidence be
27 found sufficient, according to the laws of the place
   where the person sought shall be found, either to
28 justify his committal for trial if the offense of which

treaty between the United States and Canada. Nevertheless, "the country seeking extradition is not required to produce all its evidence at an extradition hearing and it is not [this Court's] role to determine whether there is sufficient evidence to convict the accused." Quinn, 783 F.2d at 815. Rather, probable cause exists "if there is any competent evidence in the record to support it." Then v. Melendez, 92 F.3d 851, 854 (9th Cir. 1996); Quinn, 783 F.2d at 791. Competent evidence includes hearsay evidence, "and the usual rules of evidence are not applicable in this context." Then, 92 F.3d at 855 (citations omitted); Quinn, 783 F.2d at 815-16; see also Barapind v. Enomoto, 400 F.3d 744, 748 (9th Cir. 2005) (en banc) (per curiam) ("'With regard to the admissibility of evidence, the general United States extradition law requires only that the evidence submitted be properly authenticated.'" (quoting Emami, 834 F.2d at 1451)).

"Decisions of an extradition court are not directly reviewable but may be challenged collaterally by a petition for habeas corpus." Barapind, 400 F.3d at 748 n.5; Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1402 (9th Cir. 1988), cert. denied, 490 U.S. 1106 (1989). "The scope of habeas review of an extradition order is severely limited." Artukovic v. Rison, 784 F.2d 1354, 1355-56 (9th Cir. 1986). More specifically, the court may only consider whether: the extradition judge had jurisdiction to conduct the proceeding and over the individual sought; the extradition treaty was in force; the crime fell

he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

Heinemann Decl., ¶ 3, attachments at 18.

7

1  within the treaty's terms; there is probable cause the individual

2  sought committed the crime; and the crime comes within the political

3  offense exception.  Cornejo-Barreto, 218 F.3d at 1009-10; In re

4  Extradition of Coe, 261 F. Supp. 2d 1203, 1205-06 (C.D. Cal. 2003).

5

6                                    IV

7      The extradition treaty between the United States and Canada

8  provides, in relevant part:

9

10     (1) Extradition shall be granted for conduct which

11     constitutes an offense punishable by the laws of both

12     Contracting Parties by imprisonment or other form of

13     detention for a term exceeding one year or any greater

14     punishment.

15

16  Heinemann Decl., ¶ 3, attachments at 9-42.

17

18     The charges pending against petitioner in Canada are set forth in

19  Sections 380 and 145 of the Criminal Code of Canada.  Specifically,

20  Section 380(1)(a) prohibits fraud over $5,000.00, as follows:

21

22     (1)  Every one who, by deceit, falsehood or other fraudulent

23     means, whether or not it is a false pretence within the

24     meaning of this Act, defrauds the public or any person,

25     whether ascertained or not, of any property, money or

26     valuable security or any service,

27     (a) is guilty of an indictable offence and liable to a term of

28     imprisonment not exceeding ten years. . . .

                                   8

Affidavit of Nadia Elizabeth Thomas ("Thomas Aff."), ¶¶ 15-16.  The
affidavit of Detective Constable Lappan sets forth evidence showing
that petitioner, between May 1992 and July 1996, defrauded Barbara
Lubov Henderson, a Canadian resident, of approximately $3.2 million
Canadian dollars.  Lappan Aff., ¶¶ 2, 7-11, attachments at 67-77.
Specifically, Detective Constable Lappan states:

> 8. . . .  In July 1994, . . . , Darren COHEN contacted Ms.
> HENDERSON by telephone and engaged her in what would later
> be found to be a fraudulent scheme.  COHEN told Ms.
> HENDERSON that, as a result of her years as a customer to
> telemarketing agencies, her name had been entered into a
> cash promotion in the United States, and that she was the
> grand prize winner of several million dollars in United
> States funds.  COHEN explained to the victim that, unlike
> Canada where a prize money is not taxable, prize winnings in
> the United States were taxable and that those taxes had to
> be paid prior to the release of any awards.  Darren COHEN
> then fraudulently represented himself as an agent for a
> company in the United States who would, for a percentage,
> act on the victim's behalf, as an intermediary to facilitate
> the victim claiming her prize money while paying the least
> amount of taxes possible.  COHEN asked the victim to provide
> him with various sums of money, in order to facilitate
> collection of her winnings.  The victim agreed to do so, and
> she forwarded her money to COHEN after liquidating her stock
> portfolio in Scotland.  All funds passed through the
> victim's financial accounts in Canada before being wired to.

the accused's personal accounts, which were located both in
Canada and in the United States. The police investigation
into this matter later revealed there were no "prize
winnings," and that COHEN was not acting for the victim in
any legitimate capacity. [¶] 9. Ms. HENDERSON was also
the unfortunate victim of a home invasion robbery in 1996.
She discussed this traumatic event with [COHEN], who
suggested that she travel to his home in California for some
relaxation. The victim agreed to travel from Canada to
COHEN's home, and she stayed with him at 14131 Beresford
Road, Beverly Hill[s], California between 10 June 1996 and
23 June 1996, before returning to Canada. During that time,
COHEN had daily personal contact with the victim, and he
continued to ply her for money. [¶] 10. The total amount
received by [COHEN] from the victim during the period May
1992 to July 1996, was approximately $3,253,329.50 in
Canadian dollars.

Section 145(2) and (3) of the Criminal Code of Canada provides,
as follows:

(2) Every one who,

a) being at large on his undertaking or recognizance
given to or entered into before a justice or judge,
fails, without lawful excuse, the proof of which lies
on him, to attend court in accordance with the
undertaking or recognizance, or

b) having appeared before a court, justice or

10

1    judge, fails, without lawful excuse the proof of

2    which lies on him, to attend court as thereafter

3    required by the court, justice or judge, or to

4    surrender himself in accordance with an order of

5    the court, justice or judge, as the case may be,

6    is guilty of an indictable offence and liable to

7    imprisonment for a term not exceeding two years or

8    is guilty of an offence punishable on summary

9    conviction[.]

10   (3) Every person who is at large on an undertaking or

11   recognizance given to or entered into before a justice or

12   judge and is bound to comply with a condition of that

13   undertaking or recognizance directed by a justice or judge,

14   . . . , and who fails, without lawful excuse, the proof of

15   which lies on that person, to comply with that condition or

16   direction, is guilty of

17           a) an indictable offence and is liable to imprisonment

18           for a term not exceeding two years; or

19           b) an offence punishable on summary conviction.

20

21   Thomas Aff., ¶ 17.

22

23       The affidavit of Detective Constable Lappan also establishes that

24   on October 17, 1996, petitioner was arrested on the charge of

25   violating Section 380(1)(a), fraud in excess of $5,000.00, and,

26   following a hearing, petitioner was released from custody on certain

27   terms and conditions.  Lappan Aff., ¶¶ 11-12.  Petitioner's conditions

28   of release were subsequently amended to permit him to return to

11

California to conduct his business, provided, among other things:  he
reside at 14131 Beresford Road, Beverly Hills, California; he
immediately notify Detective Constable Lappan of any change of his
California address; and he provide Detective Constable Lappan with a
written itinerary in advance of leaving California.  Id., ¶ 13.
Petitioner was required to appear in Ontario Superior Court on July
10, 1998, to plead guilty to the charge of fraud in excess of
$5,000.00, Section 380(1)(a), but he failed to appear and a new court
date of August 4, 1998, was set.  Id., ¶ 14.  Petitioner again failed
to appear in Ontario Superior Court on August 4, 1998.  Id., ¶ 16.
When Detective Constable Lappan made inquiries regarding petitioner's
residence, he discovered petitioner was no longer living at 14131
Beresford Road, Beverly Hills; rather, he had sold his cars for cash
and had left California without leaving a forwarding address and
without providing Detective Constable Lappan with a written itinerary
of his whereabouts, both of which were required by the terms of his
release.  Id., ¶¶ 15-17.


     Petitioner claims in Grounds One there is no probable cause to
support his extradition.  There is no merit to this claim.  As an
initial matter, petitioner does not dispute he is the same Darren
Irwin Cohen against whom such charges are now pending.  See also
Lappan Aff., ¶ 4, attachment at 79-80.  Moreover, based on the
evidence from Detective Constable Lappan detailed above, there is more
than sufficient evidence to establish probable cause that petitioner
committed each of the offenses charged against him.  Nevertheless, in
his reply and supplemental reply, petitioner has submitted evidence he
claims establishes that the monies he received from Ms. Henderson were

1  gifts, rather than proceeds fraudulently obtained.  See Reply at 5:13-

2  14, 6:7-7:23, Exh. B at 14, Exhs. C, J-L; Supplemental Reply at 1:17-

3  3:22, Exh. F.  Although "a fugitive facing extradition can present his

4  own evidence to explain away the requesting government's evidence of

5  probable cause[,]" Barapind, 400 F.3d at 749; Mainero v. Gregg, 164

6  F.3d 1199, 1207 n.7 (9th Cir. 1999), the evidence petitioner has

7  presented does not do that.  Rather, it is merely petitioner's

8  "conflicting evidence, the credibility of which could not be assessed

9  without a trial."  Barapind, 400 F.3d at 750; see also Emami, 834 F.2d

10 at 1452 ("An extradition proceeding is not a trial; the relevant

11 determination is confined to whether a prima facie case of guilt

12 exists that is sufficient to make it proper to hold the extraditee for

13 trial.").  Thus, since this Court "does not weigh conflicting evidence

14 and make factual determinations" in assessing probable cause,

15 petitioner's "gift" evidence provides no basis for rejecting the

16 Government's evidence establishing probable cause petitioner committed

17 fraud.  Barapind, 400 F.3d at 750; see also Emami, 834 F.2d at 1452

18 (Emami's "attempt . . . to use his records to explain that no

19 fraudulent billings for medical services had occurred would only be

20 appropriate at trial.").  Similarly, petitioner's claim that Ms.

21 Henderson is now dead, and would not be available as a witness at his

22 trial, is a matter for the Canadian courts to address, and it does not

23 negate the probable cause determination.  Mainero, 164 F.3d at 1207.[7]

24

25     Further, each of the charged offenses is comparable to a federal

26 _____

27     [7] It should be noted that before petitioner fled, Ms.
   Henderson testified under oath at petitioner's preliminary
28 inquiry.  Supplemental Reply, Exh. F.

1  charge in the United States, and each is punishable in both Canada and

2  the United States by imprisonment of more than one year, as required

3  by the extradition treaty between the United States and Canada.

4  First, the offense of fraud in excess of $5,000.00, Section 380(1)(a),

5  is comparable to the federal offenses of fraud and mail fraud set

6  forth in 18 U.S.C. §§ 1341, 1343, and both the Canadian and American

7  offenses are punishable by imprisonment for more than one year.

8  Petitioner does not dispute this.  Second, petitioner also does not

9  dispute that the offense of failure to attend a court hearing, Section

10  145(2), is comparable to the federal offense of failure to appear set

11  forth in 18 U.S.C. § 3146, which also is punishable in both Canada and

12  the United States by imprisonment for more than one year.

13

14      However, in Ground Two, petitioner claims there is no federal

15  counterpart to the Canadian offense of breach of recognizance under

16  Section 145(3) of the Criminal Code of Canada, and the offense is not

17  punishable by more than one year imprisonment; thus, petitioner claims

18  he cannot be extradited to face charges on that offense.[8]  Petitioner

19  is mistaken.  An examination of the United States Code shows that a

20  criminal defendant who violates or breaches a condition of pretrial

21  release, such as petitioner did, may be charged with violating 18

22  U.S.C. § 3148, which provides:

23

24      (a) **Available sanctions.** - A person who has been released

25      under section 3142 of this title, and who has violated a

26

─────────────

27      [8]  Respondent aptly notes, of course, that this claim would
**not** prevent petitioner's extradition since he would,

28  nevertheless, be extradited on the other charges against him.

14

condition of his release, is subject to a revocation of

release, an order of detention, and a prosecution for

contempt of court.

\*   \*   \*

(c) **Prosecution for contempt.** - The judicial officer may

commence a prosecution for contempt, under section 401 of

this title, if the person has violated a condition of

release.

18 U.S.C. § 3148.  In turn, Section 401 provides for criminal

contempt, as follows:


A court of the United States shall have power to punish by

fine or imprisonment, or both, at its discretion, such

contempt of its authority, and none other, as -

\*   \*   \*

(3) Disobedience or resistance to its lawful writ, process,

order, rule, decree, or command.


18 U.S.C. § 401.  Although Section 401 does not provide a specific

penalty for its violation, "sentences for contumacious conduct can be

quite severe.  Under federal law, there is no statutory limit to the

sentence that can be imposed in a jury-tried criminal contempt

proceeding." United States v. Dixon, 509 U.S. 688, 724 n.2, 113 S.Ct.

2849, 2871 n.2, 125 L.Ed.2d 556 (1993)(Justice White, concurring, in

part, and dissenting, in part); see also Green v. United States, 356

U.S. 165, 187-89, 78 S.Ct. 632, 645-46 2 L.Ed.2d 672 (1958) (affirming

three-year criminal contempt sentence under Section 401 for failing to

15

1  appear in court after being released on bail), <u>overruled in part on</u>

2  <u>other grounds</u>, <u>Bloom v. State of Illinois</u>, 391 U.S. 194, 88 S.Ct.

3  1477, 20 L.Ed.2d 522 (1968); <u>United States v. Carpenter</u>, 91 F.3d 1282,

4  1283 (9th Cir. 1996) ("The criminal contempt statute, 18 U.S.C. §

5  401(3), grants broad discretion in determining a sentence; it

6  specifies neither minimum nor maximum penalty." (footnote omitted))

7  (per curiam)); <u>United States v. Gabay</u>, 923 F.2d 1536, 1538-39 n.1,

8  1545 (11th Cir. 1991) (affirming 60-month sentence for criminal

9  contempt in violation of Section 401 for defendant who fled shortly

10 before his criminal trial).

11

12     Finally, in his reply and supplemental reply, petitioner concocts

13 an elaborate scenario under which his and his mother's lives would be

14 placed in grave danger if he is extradited to Canada because he

15 previously acted as "an undercover operative," assisting the Ontario

16 Provincial Police ("O.P.P.") and Royal Canadian Mounted Police in

17 exposing fraud in the Canadian telemarketing industry and in

18 uncovering "deep rooted corruption among O.P.P. rank and file."[9]

19 Reply at 1:2:18, 5:21-27, 7:26-8:25, 10:2-21, Exhs. A, G, M;

20 Supplemental Reply at 4:22-28.  Of course, new claims for relief

21 cannot be raised in a reply brief.  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d

22 504, 507 (9th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1026 (1995).

23 Nevertheless, even if this claim were properly raised, under the rule

24

25     [9]  Indeed, petitioner further states that, with Ms.
26 Henderson's money and blessing, he funded operation "Phone
   Busters," and for that work, he "received awards and medals" due
27 to his "single-handed efforts that produced and resulted in the
   indictments and arrests and thus the shutting down of . . .
28 fraudulent companies. . . ."  Supplemental Reply at 4:6-22.

16

1  of non-inquiry, "an extraditing court will not inquire into the

2  procedures or treatment awaiting a surrendered fugitive in the

3  requesting country." Lopez-Smith v. Hood, 121 F.3d 1322, 1326-27 (9th

4  Cir. 1997); Mainero, 164 F.3d at 1205 n.6; see also Blaxland v.

5  Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir.

6  2003) ("[T]he rule of non-inquiry limits the judicial role, although

7  'it is not that questions about what awaits the relator in the

8  requesting country are irrelevant to extradition; it is that there is

9  another branch of government, which has both final say and greater

10 discretion in these proceedings, to whom these questions are more

11 properly addressed.'" (citation omitted)). Moreover, petitioner has

12 presented absolutely no reliable evidence that "corrupt" O.P.P.

13 officers would harm him if he returns to Canada.[10] Extradition of

14 Manzi, 888 F.2d 204, 206 (1st Cir. 1989), cert. denied, 494 U.S. 1017

15 (1990). Similarly, petitioner has presented absolutely no reliable

16 evidence that various "criminals" in Canada would harm him if he

17 returns to Canada.[11] Mainero, 164 F.3d at 1210; see also Sindona v.

18

---

19    [10] Petitioner cites two newspaper reports in which O.P.P.
   officers were charged with various crimes, Reply, Exh. M;
20 however, petitioner does not relate these charges to any
   incidents involving himself. Similarly, petitioner provides the
21 declaration of his friend, Howard Denbow, who relates that
   petitioner "intimated" to him that certain individuals want to
22 kill him and have threatened petitioner's mother, and these
   individuals have "a strong network of Police affiliations."
23 Reply, Exh. A. However, Denbow's statement is hearsay, and
   reflects solely what petitioner told him! Finally, petitioner's
24 mother, Sandra Bernard, states that certain criminal
25 organizations "have large numbers of high-ranking O.P.P. officers
   on their 'payroll.'" Reply, Exh. G. However, Mrs. Bernard sets
26 forth no personal knowledge or basis for this statement.

27

28    [11] Petitioner relies exclusively on Mr. Denbow's and his
   mother's declarations. Mr. Denbow vaguely reports threats to

1  <u>Grant</u>, 619 F.2d 167, 174-75 (2d Cir. 1980) (refusing to bar

2  petitioner's extradition to Italy despite claim "return to Italy would

3  subject [petitioner] to risk of murder or injury at the hands of his

4  political enemies"); <u>Peroff v. Hylton</u>, 542 F.2d 1247, 1249 (4th Cir.

5  1976) ("If there are potential assassins in Swedish prisons, it is for

6  Sweden to take measures adequate to secure [extraditee's] safety and

7  protection.  . . .  There is no basis for suspecting Sweden's criminal

8  processes, or supposing that Sweden cannot or will not adequately

9  provide for [extraditee's] protection from criminal elements who may

10  have grievances against him."), <u>cert. denied</u>, 429 U.S. 1062 (1977).

11

12      Thus, for the foregoing reasons, petitioner should be extradited

13  to Canada to face charges for violating Sections 380(1)(a) and 145(2)

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  ─────────────────

23  petitioner "from people I knew living in Montreal as well as from
    Darren and his mother." Reply, Exh. A.  Petitioner's mother

24  states that in April 1998, she was confronted by the wife of an
    individual who was under investigation by the "Phone Busters"

25  task force, and who "made it very clear that it would be in

26  [petitioner's] and [his mother's] best interest, to put it
    mildly, for [petitioner] not to set foot in Canada again."

27  Reply, Exh. G.  Despite this threat, however, petitioner's mother
    has apparently continued to reside in Canada for the past seven

28  years.

18

1  and (3) of the Criminal Code of Canada, and petitioner's habeas corpus

2  petitioner should be denied.

3

4                              **RECOMMENDATION**

5        For the foregoing reasons, IT IS RECOMMENDED that the Court issue

6  an Order: (1) approving and adopting this Report and Recommendation;

7  (2) adopting the Report and Recommendation as the findings of fact and

8  conclusions of law herein; and (3) entering Judgment denying the

9  petition and dismissing the action with prejudice.

10

11  DATE: _April 25, 2005_          _Rosalyn M. Chapman_

12                                  ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

13  R&R\04-7645.R&R
    4/25/05

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28